# IN THE UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LEONA HUVAL** | Civil Action No.: |
| Plaintiff, | |
| v. | Judge: |
| **EXACTECH, INC.** | |
| Defendant. | Magistrate Judge: |

## COMPLAINT AND JURY DEMAND

NOW INTO COURT, through undersigned counsel, comes Plaintiff Leona Huval ("Plaintiff"), a person of the full age of majority, who brings this action against Defendant Exactech, Inc. ("Exactech") for personal injuries suffered from the implantation of an Exactech Optetrak Knee Replacement System. Plaintiff alleges the following upon information and belief:

## PARTIES

1. Plaintiff Leona Huval is a citizen and resident of Youngsville, Lafayette Parish, Louisiana.

2. Defendant Exactech, Inc. is a Florida corporation with its principal place of business at 2320 NW 6th Court, Gainesville, Florida 32653.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and there is complete diversity between the parties.

4.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because all or a substantial part of the events or omissions giving rise to this claim occurred in the Western District of Louisiana.

5.  Venue is also proper in this district pursuant to 28 U.S.C. § 1391(b)(3) because Defendant has sufficient minimum contacts with the State of Louisiana and intentionally availed itself of the market within Louisiana through the promotion, sale, marketing, and distribution of its products.

**FACTUAL BACKGROUND**

6.  From 2004 to 2022 Defendant Exactech manufactured, marketed, and sold the Optetrak Knee Replacement System ("Optetrak System") containing a defective polyethylene tibial insert packaged in a non-conforming bag ("defective insert") and a defective finned tibial tray component ("defective tibial tray").

7.  Although Defendant had obtained FDA 510(k) clearance under the Medical Device Amendments of 1976 to the Food Device Cosmetic Act (MDA) for sale and distribution of the Optetrak System, this type of clearance did not involve clinical testing by the FDA for safety and effectiveness or quality control of device or any of its components.

8.  Exactech retained sole responsibility for safety and effectiveness of the Optetrak System, specifically, during the period it was marketed and sold with the defective insert and tibial tray.

9.  On May 3, 2017, Dr. Adam Perry performed a knee replacement surgical procedure on Plaintiff using the Optetrak System at Lafayette Surgical Specialty Hospital in the Western District of Louisiana.

10. Almost immediately after the surgery, Plaintiff experienced stiffness, pain, and discomfort at the site of the implant.

11. In September 2022, Plaintiff was advised by her orthopedic surgeon that she needed revision surgery to correct the failed knee replacement device. On December 12, 2022, Plaintiff underwent revision surgery.

12. Had Plaintiff, or Plaintiff's physician, known of the dangers associated with the Optetrak System, they would not have purchased, recommended, implanted or prescribed the Optetrak System.

## THE DEFECTIVE INSERT

13. On August 30, 2021, Defendant issued a partial recall of knee implant systems with polyethylene inserts implanted between 2004 and 2022.[1]

14. Then, on February 7, 2022, Defendant expanded its recall to include all Optetrak Total Knee Replacement Systems.[2]

15. The recall was due to polyethylene inserts packaged in non-conforming vacuum bags that augmented oxygen resistance.

16. As a result of the non-conforming packaging, the polyethylene inserts were prone to accelerated wear, debris production, bone loss, and component fatigue, cracking and fracture, all of which require corrective revision surgery.

17. Defendant knew, or should have known, that between 2004 and 2022, the defective inserts were being packaged in bags that did not comply with its own specifications for

---

[1] *See* https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfRes/res.cfm?ID=189266
[2] *See* https://www.exac.com/wp-content/uploads/2022/04/Exactech-DHCP-letter.4.6.2022.pdf

3

protection.

18. Defendant knew or should have known that the defective inserts were prone to premature wear based on patient complaints reported in the Australian Orthopaedic Association National Joint Replacement Registry ("AOANJRR"), which identified the Optetrak Knee Replacement System as having significantly higher overall revision rates due to loosening, bone loss, pain and other debilitating injuries. As early as 2007, the AOANJRR identified the Optetrak System as having a higher than anticipated rate of revision, and by 2020, clinical evidence showed the rate of revision exceeded international guidelines for accepted revision rates.

19. Plaintiff could not, by the exercise of reasonable care, discover the defective condition of Defendant's polyethylene insert and/or perceive its defective dangers prior to February 7, 2022, when Defendant issued a recall of the Optetrak System by sending a letter to Exactech surgeons advising they avoid implanting nonconforming devices and requesting they return all conforming and nonconforming devices to Exactech.

20. Defendant's Optetrak Systems with their defective inserts are considered adulterated pursuant to 21 U.S.C. § 351 because they failed to meet established performance standards, and/or methods, facilities, or controls used for their manufacture, packaging, storage, or installation, and are not in conformity with federal requirements in accordance with Current Good Manufacturing Practices ("cGMP") for medical devices. *See* 21 U.S.C. § 351; 21 C.F.R. § 820, *et seq.*

21. Defendant's Optetrak Systems with their defective inserts are considered misbranded because they are dangerous to health when used in the manner prescribed, recommended, or

suggested in the labeling thereof. *See* 21 U.S.C. §

22. Had Defendant complied with the federal requirements regarding cGMP, Defendant's knee implant devices would have been manufactured properly and would not have resulted in injuries to Plaintiff.

## THE DEFECTIVE TIBIAL TRAY

23. Defendant manufactured and sold the Optetrak System with defective tibial trays. The tibial tray was marketed as a component that anchors to the patient's tibia and connects to the artificial knee.

24. Despite receiving numerous reports of adverse events relating to injuries caused by the defective tibial tray, Defendant failed to report these events in violation of the FDA's requirements surrounding devices for which there has been a failure. 21 U.S.C. § 352(t).

25. Defendant's Optetrak Systems with their defective tibial trays are considered adulterated pursuant to 21 U.S.C. § 351 because they failed to meet established performance standards, and/or methods, facilities, or controls used for their manufacture, packaging, storage, or installation, and are not in conformity with federal requirements in accordance with Current Good Manufacturing Practices ("cGMP") for medical devices. *See* 21 U.S.C. § 351; 21 C.F.R. § 820, *et seq*.

26. Defendant's Optetrak Systems with their defective tibial trays are considered misbranded because they are dangerous to health when used in the manner prescribed, recommended, or suggested in the labeling. *See* 21 U.S.C. § 352.

27. Had Defendant complied with the federal requirements regarding cGMP, Defendant's knee implant devices would have been manufactured properly and would not have resulted in

injuries to Plaintiff.

## EQUITABLE ESTOPPEL AND *CONTRA NON VALENTEM*

28. Plaintiff invokes the doctrine of *contra non valentem* as she could not discover the defects and unreasonably dangerous condition of the Optetrak System.

29. Defendant is estopped from relying on any prescription limitations by virtue of its acts of fraudulent concealment, affirmative misrepresentations and omissions, which include Defendant's intentional concealment from Plaintiff, Plaintiff's health care professionals and the general public that the Optetrak System was unreasonably dangerous and carried a serious risk of causing injuries.

30. Defendant breached its duty to disclose that the Optetrak System was unreasonably dangerous and carried with it the serious risk of early failure, injury and need for revision surgery.

31. Defendant breached its duty to notify, inform, or disclose to Plaintiff, Plaintiff's health care professionals or the general consuming public that the incidence of injury among recipients of the Optetrak System was abnormally high and that its use carried with it the serious risk of developing the injuries Plaintiff has suffered.

## CAUSES OF ACTION

### COUNT I – STRICT LIABILITY – UNREASONABLY DANGEROUS IN COMPOSITION

32. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

33. The Optetrak System containing the defective insert and/or defective tibial tray was unreasonably dangerous in construction or composition as manufactured, packaged, distributed, marketed, and/or sold by Defendant, as it deviated in a material way from

Defendant's own specifications or performance standards for the product and from otherwise identical products manufactured by Defendant. Therefore, the Optetrak System was unreasonably dangerous in construction or composition as provided by La. R.S. 9:2800.55 of the Louisiana Products Liability Act ("LPLA").

34. The defective components in the Optetrak System were a substantial factor in causing Plaintiff's injuries.

35. Defendant is strictly liable for the defective condition, distribution, marketing, and sale of the Optetrak System and the injuries sustained by Plaintiff.

## COUNT II – STRICT LIABILITY – UNREASONABLY DANGEROUS IN DESIGN

36. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

37. Defendant had a duty to design and package the Optetrak System and its components in a manner that did not present an unreasonable risk of harm or injury to users and patients, including Plaintiff.

38. Feasible, safer, alternative designs and packaging providing the same functional purpose were available to Defendant at the time the defective components of the Optetrak System were designed, packaged, and offered for sale in the market.

39. Plaintiff's physician implanted the defective tibial tray and defective insert in the manner in which they were intended and recommended to be used, making such use and resulting damage reasonably foreseeable to Defendant.

40. At the time the Optetrak System left Defendant's control, there existed alternative designs capable of preventing Plaintiff's damage, and the likelihood and gravity of damage outweighed the adverse effect on utility and the burden on Defendant to adopt such an

7

alternative design. The design of the defective tibial tray and the packaging of the defective insert were unreasonably dangerous for their expected, intended, and/or foreseeable uses, functions, and purposes, when they were placed into the stream of commerce, in violation of La. R.S. 9:2800.56 of the LPLA.

41. The defective components in the Optetrak System were a substantial, proximate, and contributing factor in causing Plaintiff's injuries.

### COUNT III – STRICT LIABILITY-UNREASONABLY DANGEROUS BECAUSE OF INADEQUATE WARNING

42. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

43. Defendant failed to use reasonable care to provide adequate warnings regarding dangers in the use and handling of the defective tibial tray and defective insert, in violation of La. R.S. 9:2800.57 of the LPLA.

44. Defendant had a duty to distribute, market, and/or sell the Optetrak System with adequate warnings of the product's danger to users and handlers of the product and/or any characteristics that may cause damage.

45. The warnings that accompanied the Optetrak System and its packaging were inadequate, thereby making the product not reasonably safe for its expected, intended, and/or foreseeable uses, functions, and purposes.

46. Defendant failed to adequately disclose the danger of the defective tibial tray after learning of its propensity to undergo substantial early failure and cause component loosening, tissue damage, bone loss, osteolysis, the need for revision surgery, and other serious complications.

47. Defendant knew of the defective insert's increased risk of harm to the Plaintiff and

other consumers, and that warnings would have been feasible and effective in preventing Plaintiff's injuries.

48. The Optetrak Systems containing the defective tibial trays and defective inserts were unreasonably dangerous when they left the possession of Defendant, in that they contained warnings insufficient to alert users and handlers, including Plaintiff and Plaintiff's health care providers, of the dangerous risks and reactions associated with the Optetrak System.

49. The Optetrak System was unreasonably dangerous because Defendant failed to use reasonable care to provide an adequate warning about the product's potentially damage-causing characteristic, as required by La. R.S. 9:2800.57 of the LPLA.

### **COUNT IV – UNREASONABLY DANGEROUS BECAUSE OF NON-CONFORMITY TO EXPRESS WARRANTY**

50. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

51. At the time Defendant applied for the 510(k) premarket approval of its Optetrak System, Defendant warranted that all components would be supplied and properly packaged according to specifications, and that Defendant would conduct package validation testing. Defendant failed to perform the package testing over the course of sales from 2004 through 2022.

52. Defendant warranted that it would comply with 21 CFR Part 820 of the FDA regulations for Current Good Manufacturing Practice (cGMP) requirements to ensure safety and effectiveness of its medical devices, including packaging of finished devices under subpart K and L (subsection 130, 140, 150 of part 820). Defendant violated this warranty.

53. Through marketing and advertising, Defendant warranted less polyethylene wear from using the Optetrak System as compared to other manufacturers' devices. Defendant

9

breached this warranty.

54. Defendant was both manufacturer and seller of the Optetrak System and warranted against redhibitory defects regarding defective components when used. Because Defendant was in bad faith and failed to reveal the defects, Defendant is liable for reimbursement of the expenses, damage, and attorneys' fees under Louisiana Civil Code Article 2345.

55. Feasible, safer, alternative designs and packaging providing the same functional purpose were available to the Defendant at the time the defective tibial tray and the defective insert were designed, packaged, and offered for sale in the market.

56. In order to obtain a commercial advantage, Defendant engaged in disseminating inaccurate, false, and/or misleading information about the Optetrak Knee Replacement with a reasonable expectation that such information would be used and relied upon by physicians and medical providers throughout the State of Louisiana, including but not limited to:

    a. false representations regarding the duration and survival of the components lasting longer than other knee implants; and

    b. promotional materials of successful outcomes with survival rates of 15 to 20 years despite adverse event reports.

57. At the time of making such express warranties, Defendant knew and/or should have known that the Optetrak System did not conform to the express warranties and representations and that, in fact, its product was unreasonably dangerous and carried with it the serious risk of early failure, injury and need for revision surgery, of which Defendant had full knowledge and did not accurately or adequately warn.

58. Defendant's express warranty induced consumers and their healthcare providers, to

purchase and use the Optetrak System. Plaintiff was a consumer of Defendant's defective insert and defective tibial tray and was wrongfully billed and charged because Defendant's express warranty was untrue.

59. The Optetrak System was unreasonably dangerous because it failed to conform to Defendant's express warranty, as provided by La. R.S. 9:2800.58 of the LPLA. Plaintiff's injuries were a foreseeable, direct, and proximate result of Defendant's breach of the express warranty.

### COUNT V – BREACH OF WARRANTY IN REDHIBITION

60. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

61. The Optetrak System contains a vice or defect which renders it useless or its use so inconvenient that consumers would not have purchased it had they known about the vice or defect.

62. Pursuant to Louisiana Civil code article 2520, a seller warrants the buyer against redhibitory defects, or vices, in the thing sold. The Optetrak System, which was sold and promoted by Defendant, possesses a redhibitory defect because it is unreasonably dangerous, as described above, which renders it useless or so inconvenient that it must be presumed that Plaintiff or his implanting surgeon would not have used the device had they known of the defects.

63. Defendant was aware of the substantial risk of early failure of the Optetrak System containing a defective insert and/or defective tibial tray, but failed to fully disclose those risks to Plaintiff and his implanting surgeon.

64. In accordance with Louisiana Civil Code article 2545, Defendant, as the manufacturer,

distributor and seller of the Optetrak System, is deemed to be aware of its redhibitory defects.

65. Had Plaintiff been made aware of the defects contained in the Optetrak System, she would not have used or purchased it. This characteristic rendered the device unfit for its intended purposes.

66. Defendant is liable to Plaintiff under the theory of redhibition as a consequence of the sale to Plaintiff of a product unfit for its intended use.

67. Plaintiff is entitled to the return of purchase price paid for the Optetrak System and other associated monetary injuries, including, but not limited to, insurance co-payments, interest on these amounts from the date of purchase, attorneys' fees and costs, pecuniary and non-pecuniary damages, as well as any other legal and equitable relief to which Plaintiff may be entitled.

## **DAMAGES**

68. By reason of the foregoing acts, omissions and conduct committed by Defendant, Plaintiff sustained serious personal injuries, severe pain and suffering, physical disability, mental anguish, emotional distress, fear, loss of enjoyment of life, medical expenses, and financial losses, and she will sustain future damages, including but not limited to cost of medical care; rehabilitation; home health care; loss of earning capacity; mental and emotional distress and pain and suffering. Accordingly, Plaintiff is seeking compensatory and special damages, including attorneys' fees and costs, and all other available remedies under the law.

## **JURY DEMAND**

69. Plaintiff respectfully demands a trial by jury of all claims that are so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Leona Huval prays for damages together with costs, judicial interest and any other relief deemed appropriate under the law.

Dated: February 6, 2023
Respectfully submitted,

/s/ Korey A. Nelson
Korey A. Nelson
knelson@burnscharest.com
LA Bar # 30002
Amanda K. Klevorn
aklevorn@burnscharest.com
LA Bar # 35193
Claire E. Bosarge
cbosarge@burnscharest.com
LA Bar # 39809
Jayde Encalade (*Pro Hac* to be applied for)
TX Bar # 24126624
jencalade@burnscharest.com
**BURNS CHAREST LLP**
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765